John Harlin DAVIS, Appellant,

v.

CITY OF BOWLING GREEN et al., Appellees.

John H. DAVIS, Appellant,

v.

CITY OF BOWLING GREEN et al., Appellees.

Court of Appeals of Kentucky.

Dec. 2, 1955.

Rehearing Denied May 11, 1956.

August Winkenhofer, Jr., Bowling Green, Hubert Meredith, Greenville, for appellant.

G. D. Milliken, Jr., Paul Huddleston, Bowling Green, for appellees.

CAMMACK, Judge.

This appeal is from a judgment in consolidated actions which overruled the appellant's motion for contempt of court against the individual appellees, and which also sustained a forfeiture resolution of the General Council of the City of Bowling Green, an appellee. This is the second appeal in the controversy between Davis and the City. In our first opinion, 313 Ky. 203, 230 S.W.2d 909, we found that Davis had a valid contract with the City, under which he obtained a franchise for the disposal of garbage in the City. We found also that a resolution of the General Council purporting to cancel the franchise was null and void. The City was directed to enact an ordinance fixing reasonable and proper rates to be charged under the franchise, and to enact an ordinance regulating the activities and conduct of the public, Davis, his customers, and his actual or potential competitors, and to approve the performance bond tendered by Davis. Our opinion was dated June 6, 1950.

No official action was taken by the City pursuant to that mandate. In fact, no further action was taken by either party until February 15, 1954, when the General Council (the personnel of which had changed more than once in the meantime) adopted a resolution cancelling Davis' garbage franchise. Davis then filed his motion to hold the City in contempt of court for failing to comply with the prior judgment, which

had been affirmed on appeal. Shortly before, the City had filed a declaratory judgment proceeding to determine the rights of the parties under the franchise; in view of its recently adopted resolution of forfeiture. The two cases were consolidated for trial.

The trial court overruled Davis' motion for an order of contempt because it was revealed at the trial that the prior judgment had not been signed by the Special Judge who tried the case. Neither had he signed the order book. By the time of this action in the trial court, the judgment had been signed. The forfeiture resolution of February 15, 1954 was sustained. In his opinion, the trial judge relied upon the provision of the franchise ordinance which set forth the obligation of the franchise holder to "commence and complete" the system of garbage collection within a period of six months. Unless this was done the franchise could be forfeited at the option of the Council.

Davis is appealing from both decisions adverse to him. He contends that the trial court erred in its ruling on the contempt motion on the ground that the defect in the judgment was cured by its affirmance on the appeal to this Court. He attacks the trial court's ruling on the forfeiture ordinance on the theory that he could not proceed under the franchise until the Council fixed the rates to be charged, and therefore no forfeiture could occur until after the rates were fixed.

■ The trial court properly overruled Davis' motion for a contempt order. A judgment is of no effect in the absence of its official signing by the trial judge. See Gross' Adm'x v. Couch, 292 Ky. 304, 166 S.W.2d 879, and cases cited therein. Hence, a party can not be held in contempt for disobeyance of an unsigned judgment. Davis cites numerous authorities in support of the proposition that the subsequent affirmance on appeal conclusively establishes that a judgment is not erroneous. However, the authorities cited do not touch the problem of the *validity* of the judgment. The judgment, even though affirmed, is still void and of no effect if not signed by the trial judge. Therefore, a party can not be held to be in contempt of such a judgment.

■■ The appellant's second contention also is without merit. The forfeiture provisions of the franchise could, by their own terms, be asserted at the option of the General Council upon the holder's failure to complete the system of garbage disposal within six months. While it is clear that the Council would take the final steps to establish the operative rates under the franchise, it is equally clear that the parties intended that those rates be set after mutual investigation and negotiation had revealed a feasible rate schedule. For example, section 34 of the franchise ordinance provided that the City garbage routes would be determined by mutual agreement of the Council and the franchise holder. The system was to be a voluntary one insofar as the City residents were concerned. They could either use the system or obtain other means of disposing of their garbage. Furthermore, the franchise was not exclusive of competition. It is clear from those provisions that the parties contemplated that feasible and proper rates could be established only after preliminary investigations had revealed the scope of usage and operation under the franchise.

The contingent questions to be agreed upon depended primarily upon facts peculiarly within the knowledge of the franchise holder. Only he could know the methods best to be employed in collecting and disposing of the garbage, the most economical routes, the capital investment required by the City's needs, and the cost of his labor. It was incumbent upon him to furnish this and other pertinent information to the Council so that negotiations on the fixing of rates could be concluded within a reasonable time.

■ The life of the franchise was twenty years. Yet, during the seven years after its issuance, neither party had taken the initiative to reach an agreement on one of the most important parts of the contract, i. e., the rates to be charged the patrons

using this system of garbage disposal. Under these circumstances, we can not escape the conclusion that there was a mutual abandonment of the contract. Therefore, it was not inappropriate for the General Council to exercise its option under the forfeiture provisions, and the trial court properly upheld that action.

Judgment affirmed.